## NATHANIEL LEWIS & others *vs.* ALBERT W. HOLBROOK.

If the charterer of a vessel violates a statute of another state by sailing from there without an inspection and permit, and the vessel, upon returning there subsequently, is seized on account thereof, the owners cannot maintain an action of tort against him to recover a sum paid by them for the penalty provided by the statute, and expenses, to procure her release, without any judicial determination of her liability to seizure. But if, upon being informed of such seizure, the owners inform the charterer thereof, and request him to take charge of the matter and procure her release, which he refuses to do, and they thereupon ask him what he wishes them to do, and he tells them to pay the penalty and expenses, and procure her discharge, and they accordingly do so, it should be left to the jury to determine whether or not this amounts to a contract by him to repay them.

THE declaration in this case contained one count in tort and ⌐ne in contract; and at the trial in the superior court, before *Morton*, J., the following facts appeared :

In 1857 the plaintiffs, being citizens of Massachusetts, verbally chartered their schooner Julian to the defendant, who was also a citizen of Massachusetts, to engage in the oyster business between this commonwealth and Virginia. A statute was then in force in Virginia, passed in 1856, and entitled "An act providing additional protection for the slave **property** of citizens of this commonwealth," which prohibited vessels owned in whole or in part by citizens of another state from sailing from Virginia

without an inspection and permit, as therein provided, under a a penalty of five hundred dollars, and appointed pilots as inspectors, and allowed an inspection fee of five dollars, for the payment of which the vessel was made liable. The defendant, having the Julian in the waters of Virginia in 1858, sailed from there without an inspection and permit under said statute. In 1860 the Julian, being again in the waters of Virginia under another master, was seized for the above violation of the statute, of which the plaintiffs were informed by telegraph. Upon receipt of the telegram, the plaintiffs called upon the defendant, showed it to him, and requested him to take charge of the matter and procure her release, which the defendant refused to do. The plaintiffs then asked the defendant what he wished them to do, and he told the plaintiffs to pay the amount of the fine and expenses, and procure her discharge ; and they accordingly paid that amount to the person claiming to be the inspector of the Commonwealth of Virginia, having the Julian in charge, and took his receipt therefor, and thereupon the Julian was released. There was no decree of forfeiture nor judgment nor judicial proceeding in Virginia, under the statute.

Upon these facts, the judge ruled that the action could not be maintained, and the jury accordingly returned a verdict for the defendant. The plaintiffs alleged exceptions.

*H. A. Scudder*, for the plaintiffs.

*A. V. Lynde*, ( *W. P. Harding* with him,) for the defendant.

Hoar, J. We cannot see upon what grounds the count in tort in the declaration can be supported. There has been no condemnation of the plaintiffs' vessel, and no judicial determination of her liability to seizure. The payment made to procure her release, if made without the authority of the defendant, was made under a denial of any responsibility incurred by him; and there is no mode in which it can now be authoritatively settled whether he had subjected her to the penalty. It is not even shown in a satisfactory manner that the person to whom the money was paid, and who signed the receipt, was authorized to receive the payment.

The question whether the statute of Virginia, which the

defendant is charged with violating, was of any validity and force against a citizen of Massachusetts, or whether it is not so far in conflict with the Constitution of the United States as to be inoperative to create any liability in him, would certainly deserve our most serious consideration, if it became necessary to decide it.

Of the right to maintain the action upon the count in contract, upon the evidence reported, we entertain some doubt. But taking the conversation exactly as it is given, we have, on the whole, come to the opinion that the evidence should have been submitted to the jury. When the plaintiffs learned by the telegraph that the vessel had been seized, they went to the defendant, showed him the communication and requested him to take charge of the matter, and procure the release of the schooner; which he refused to do. They then asked him what he wished them to do, and he told them to pay the amount of the fine and expenses, and procure the discharge of the schooner from farther detention; which they accordingly did. This is the plaintiffs' evidence, and the defendant has had no chance to be heard upon it. But if every word of it were exactly true, and nothing else were shown, it might have some legal tendency to satisfy the jury that the payment was made by the plaintiffs at the request and on behalf of the defendant. They claimed that he was the responsible party. He refused, indeed, to take charge of the matter. But they then asked what he wished them to do. To this he did not reply that he had no wish about it; or that it was no affair of his; or that the best course for them would be to pay the fine; but he told them to do it. A direction to do an act, given to a party claiming that the person giving it was the party in interest, and given in reply to a question as to his wishes, has some of the elements which characterize the employment of an agent. The denial of any obligation by the defendant would not be conclusive against this view, as he might have thought it the best way to avoid an expensive controversy.

The exceptions, so far as they relate to the count in contract, are therefore sustained.